Argued February 21, affirmed April 23, 1929.

# W. A. WARNER *v.* J. R. ELLISON AND C. H. WHITE.

(276 Pac. 1108.)

For appellants there was a brief and oral argument by *Mr. W. B. Shively.*

For respondent there was a brief over the name of *Messrs. Simon, Gearin, Humphreys & Freed,* with an oral argument by *Mr. Lester W. Humphreys.*

COSHOW, C. J.—■ No error is predicated upon the instructions given. Defendants' chief reliance is upon the well-established rule in this state that a real estate broker must, in order to recover his commission, produce a purchaser able and willing to buy on the terms offered by the seller and within the term of the broker's contract: *Everson* v. *Phelps*, 115 Or. 523 (239 Pac. 102); *Slotboom* v. *Simpson Lumber Co.*, 67 Or. 516 (136 Pac. 641); *Grindstaff* v. *Merchants' Investment & Trust Co.*, 61 Or. 310 (122 Pac. 46); *Hardy* v. *Sheedy*, 58 Or. 195 (113 Pac. 1133).

In the instant case the lease was entered into between defendants and Liberty Investment Company, a corporation. It developed during the progress of the trial that this corporation was organized for the express purpose of leasing the structure. There was also evidence tending to show that plaintiff was instrumental in interesting the parties who organized the corporation and leased the building. The corporation was organized a few days before defendants wrote to plaintiff withdrawing authority to lease the building from him. Immediately after such authority was withdrawn, acting through one Black, the lease was completed and the building erected. Said Black had had more or less negotiations with plaintiff. There is evidence to the effect that Black repeatedly tried to induce defendants to dismiss plaintiff and deal with Black. There is also evidence to the effect that the lease as made was in accordance with the plan outlined by plaintiff while actively engaged in trying to make a lease.

■ All this evidence was within the issues. Defendants overlooked the principle that the vendor, who places his property in the hands of a real estate

broker for the purpose of selling the same or leasing it as was done in the instant case, cannot by collusion with other parties withdraw authority from his broker, enjoy the fruit of the broker's efforts and thereby defeat the broker's right to recover. Mr. Justice BROWN used this pertinent language in *Everson* v. *Phelps*, 115 Or. 523, 530, 531 (239 Pac. 102), relied upon by defendants:

"The decisions disclose that the courts have guarded against any effort of principals to avoid the payment of legitimate compensation to the broker. That the principal must act in good faith toward his broker is a recognized rule of law. A vendor may not, by chicanery or any contrivance, elude or escape liability to his broker where a sale is made in accordance with the specifications contained in the agency contract."

Most of defendants' argument would have been more appropriately addressed to the jury. It was a contention of plaintiff that defendants colluded with Black to deprive plaintiff of his commission. Around this issue in the case gathered most of the evidence. Whether or not plaintiff earned the commission depended upon whether or not he was the procuring cause of the lease to Liberty Investment Company. There was evidence for and against on that issue. The question was one of fact, not one of law. The court so completely, fairly and thoroughly instructed the jury that no exceptions were taken to any of those instructions. The jury's verdict is conclusive on this court as well as on the Circuit Court.

■ The only other assignment of error needing attention is predicated on the claim that it was error for the court to require defendant Ellison to testify regarding Black's agreement to indemnify defendants

from loss by plaintiff's claim. Among other matters introduced in evidence was a letter directed to plaintiff and dated June 17th. This letter notified plaintiff that unless he produced a lessee by the 19th his authority to make a lease or produce a lessee would be withdrawn. Plaintiff claimed that before that letter was written defendants had entered into an agreement with Liberty Investment Company as a result of plaintiff's efforts. It is unnecessary to inquire into whether or not plaintiff's authority had expired before June 19th because the letter from defendants is positive proof that plaintiff's authority extended to June 19th. Now, if plaintiff's efforts had produced the lessee before the 19th and defendants leased the premises to said lessee upon the conditions and terms arranged by plaintiff, then he earned his commission. The letter was evidence of a collusion between defendants and said Black. That letter taken in connection with other evidence of Black's activity in striving to induce defendants to withdraw authority from plaintiff was evidence that defendants and Black were acting in collusion when the letter was written.

Defendants rely on the well-known and established rule in this state that a law will not permit the introduction of evidence that a defendant is insured, unless such evidence is otherwise relevant and material: *Ross* v. *Willamette Valley Transfer Co.,* 119 Or. 395 (248 Pac. 1088); *Rosumny* v. *Marks,* 118 Or. 248 (246 Pac. 723); *Morrison* v. *Carpenter,* 179 Mich. 207 (146 N. W. 106, Ann. Cas. 1915B, 319); *Birch* v. *Abercrombie,* 74 Wash. 486 (133 Pac. 1020, 50 L. R. A. (N. S.) 59, 67). That rule is not applicable if the evidence solicited is otherwise admissible. In the instant case the inquiry was whether or not there was collusion between defendants and Black. The fact

that Black was indemnifying defendants against plaintiff's claim manifests an interest from which the jury might infer properly that collusion existed. From the evidence we gather that Black was not in the insurance business. The contract of indemnity was not a general insurance contract. It was a specific contract of indemnity by one not engaged in that business and covering only the claim of plaintiff. Under such circumstances such evidence was material and relevant: *Jones* v. *Sinsheimer,* 107 Or. 491, 496 (214 Pac. 375); *Gianini* v. *Cerini,* 100 Wash. 687 (171 Pac. 1007, 1009); *Lenahan* v. *Pittston Coal Co.,* 221 Pa. St. 626 (70 Atl. 884, 885).

■ There is another reason why the admission of the testimony complained of is not reversible error, if error at all. During the progress of the trial said Black was placed on the witness-stand as a witness for defendants. On direct examination the witness Black was asked the following question:

"Q. Now, explain the nature of costs plus bidding on this job, Mr. Black, what do you mean by that?"

His answer occupied over six pages of typewritten matter and among other things he said:

"Mr. Ellison said, 'Would you be willing to give us a written assurance to that effect?' And I said, 'Gladly.' I said, 'In fact, you can make it as strong as you please and I will assure you that I will sign it for you,' and we therefore included the indemnifying clause in the contract that we entered into."

This evidence refers to Black's agreement to indemnify defendants against plaintiff. Even if it was a mistake to admit testimony of the same purport in cross-examining the defendant Ellison, such error was cured by this voluntary statement of the

witness Black produced by defendants and vouched for by them. There was no motion to strike out the evidence nor any objection to it on the part of defendants. That evidence may have been very damaging to defendants but that is their misfortune. The court made no ruling on that evidence and could not therefore have committed error.

The record discloses no error justifying a reversal. The judgment is affirmed. AFFIRMED.

McBRIDE, BEAN and ROSSMAN, JJ., concur.